## COMMONWEALTH vs. DAVID A. COBB
(and a companion case).

Barnstable. October 3, 1979. — January 9, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Constitutional Law*, Assistance of counsel. *Conflict of Interest. Practice, Criminal*, Assistance of counsel, New trial, Directed verdict, Disclosure of evidence, Disclosure of addresses of Commonwealth's witnesses, Disclosure of statements by witness. *Homicide. Malice. Self-Defense. Evidence*, Contradiction of witness, Conflicting statements of witness, Photograph. *Joint Enterprise.*

Where a counsel for a defendant charged with murder also represented in ongoing and substantial legal matters a significant prosecution witness who could potentially incriminate himself by his testimony at the murder trial, there was a genuine conflict of interest and the defendant was entitled to a new trial without any showing of prejudice arising from the conflict. [459-462]

At a criminal trial, where a witness testified that she had not overheard a telephone call made by the defendants and also testified that she did not remember stating to the police that she had overheard the conversation, there was no error in admitting in evidence under G. L. c. 233, § 23, two separate statements she had previously made to police officers as evidence of prior inconsistent statements. [462-464]

The record of a criminal trial did not support the defendants' contention that the prosecutor failed to lay a proper foundation for the admission of a witness's prior inconsistent statements. [464-465]

At a murder trial, the potentially prejudicial effect of a witness's prior inconsistent statements did not warrant their exclusion. [465-466]

At a murder trial, there was no error in the judge's instructions on the issues of intoxication, intent, self-defense, and the burden of proof. [466-468]

At a murder trial, the judge did not abuse his discretion in admitting as evidence a photograph of the victim's heart used by the medical examiner in conjunction with his description of the damage done by the fatal gunshot. [468-469]

At a murder trial, there was sufficient evidence to warrant denial of the defendant's motion for directed verdicts of not guilty on so much of the indictment as charged murder in the first and second degree. [469]

At a murder trial, the judge did not abuse his discretion in refusing to order the prosecution to reveal the addresses of its witnesses where a threat to the safety of the witnesses was inherent in the situation and where the defendant was not prejudiced by the refusal. [469-470]

At a murder trial, the denial of discovery of police reports was within the sound discretion of the judge. [470]

Where a dispute arose in the course of a murder trial as to whether the defense counsel had been given a document containing a statement of a witness, the judge did not abuse his discretion in stating that he would deal with alleged noncompliance with discovery orders only on an appropriate motion. [470-471]

INDICTMENTS found and returned in the Superior Court on March 18, 1976.

The cases were tried before *McLaughlin,* C.J. A motion by the defendant Hurley for a new trial was heard by *Beaudreau,* J.

*Frederick C. Mycock* for John Kevin Hurley.

*Gary A. Nickerson & W. James O'Neill,* Assistant District Attorneys, for the Commonwealth.

*John Cavicchi,* for David A. Cobb, submitted a brief.

HENNESSEY, C.J. A Superior Court jury returned guilty verdicts against the defendants, David A. Cobb and John Kevin Hurley, on indictments charging them with murder in the first degree of Vincent Wines. The defendants appeal, claiming several assignments of error, and also seek a reduction of the verdict or a new trial under G. L. c. 278, § 33E. We affirm the conviction of Cobb and reverse the conviction of Hurley, holding that he is entitled to a new trial because his trial counsel was inhibited in conducting Hurley's defense by a genuine conflict of interest.

The facts may be summarized briefly as follows. On January 10, 1976, a party was held at 14 Echo Road, West Yarmouth, the home of Gerald and Elizabeth Kerr. Among those present were the decedent, Vincent Wines, and Michael Amano, both members of the Trampers Motorcycle

Club, as well as the defendants, Cobb and Hurley, who were members of a rival motorcycle club called The Reapers. At some time during the party Amano, who was intoxicated, stumbled into Cobb, who reacted by pushing Amano and exchanging heated words with him. Wines interceded in Amano's behalf by drawing a pistol from his vest and pointing it at Cobb's face. The Kerrs quelled the disturbance and Wines put the gun away and apologized. Thereafter, Cobb and Hurley remained at the party conversing with Wines in an amiable fashion.

About midnight Cobb and Hurley, along with Hurley's girlfriend, Sally Leddy, returned to their home at 13 Gay Road, Yarmouth. The defendants then telephoned Robert Andrews, the president of The Reapers. According to Hurley's testimony, the defendants placed this telephone call in order to obtain Andrews' permission to use club funds to buy drugs from Wines.

Cobb and Hurley then returned to 14 Echo Road armed with a rifle and a shotgun. On entering the house, Hurley went into the living room to awaken Kerr, while Cobb entered the kitchen where Wines was sitting. According to Cobb's testimony he stepped into the kitchen and Wines started to reach for his gun. Cobb demanded that Wines put his gun down, and when Wines failed to comply, Cobb fired a warning shot. Cobb then reloaded the rifle and walked around the table next to Wines, repeating his demand that Wines put down his gun. Wines jumped up and seized the barrel of Cobb's rifle, precipitating a struggle for possession of the weapon. During this scuffle the rifle again discharged. Wines then gained control of the rifle and struck Cobb on the head with it. Cobb called out to Hurley for help and Wines struck him again with the rifle, knocking him to the floor. Hurley, who had been standing in the doorway, testified that he picked up his shotgun as Wines turned toward him with the rifle. In response to a verbal threat from Wines, Hurley fired his shotgun into Wines' side at close range, killing him instantly. Cobb next drew his knife and stabbed Wines in the back.

1. The defendant Hurley contends that a new trial is required because he was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.[1] Hurley alleges that a conflict of interest existed because his attorney in this trial, Mr. Henry E. Quarles, Jr., also represented Robert Andrews in matters unrelated to Hurley's case prior to his appointment to represent Hurley, as well as during the trial, and after Hurley's conviction. We agree.

"Once a genuine conflict is shown, there is no additional requirement that prejudice be proved. . . . Moreover, if a more tenuous conflict appears, we might still reverse the judgment on a showing of material prejudice" (citations omitted). *Commonwealth* v. *Soffen,* 377 Mass. 433, 437 (1979). See *Commonwealth* v. *Leslie,* 376 Mass. 647, 651-652 (1978); *Commonwealth* v. *Bolduc,* 375 Mass. 530, 540-543 (1978); *Commonwealth* v. *Adams,* 374 Mass. 722, 731 (1978); *Holloway* v. *Arkansas,* 435 U.S. 475, 489 (1978). The case at bar is clearly one of genuine conflict necessitating a reversal of Hurley's conviction on constitutional grounds without any showing of prejudice.

The instant case presents a more egregious situation than *Commonwealth* v. *Geraway,* 364 Mass. 168 (1973), where a borderline conflict of interest was found sufficient to warrant a discretionary reversal of a conviction under G. L. c. 278, § 33E, although a majority of the court doubted whether a constitutional violation could be made out.[2] In *Geraway,* of the six witnesses who testified to admissions by the defendant, four had been or were currently clients of

---

[1] Hurley first raised the claim of ineffective assistance of counsel in a motion for a new trial which was denied after hearing by a judge other than the trial judge, who had retired from the court after the trial.

[2] *Geraway* was decided prior to *Holloway* v. *Arkansas,* 435 U.S. 475 (1978), at a time when there was still "doubt whether Federal constitutional principles requir[ed] that a new trial be granted where a nonprejudicial conflict exist[ed]." *Commonwealth* v. *Geraway,* 364 Mass. 168, 174 (1973).

the firm representing the defendant, although their matters were not related to that defense. Three of the four had been counseled by a partner about giving information to an investigating officer before trial. One of the four was himself under suspicion of having committed the murder. The partner who tried the *Geraway* case evidently was not conscious of the facts held to create the conflict. Like *Geraway*, in the instant case there was a dual representation of the defendant Hurley and the prosecution witness Andrews (who was also a potential suspect as an accessory to the crime). However, in this case, the conflict is more palpable because the dual representation was undertaken not by a single firm but by one individual, so that there is no question of imputing knowledge of conflicting interests vicariously from one member of a firm to the other members.

An examination of both the nature of the relationship between Mr. Quarles and Andrews and the circumstances of this case demonstrates that a "genuine conflict" clearly existed. Andrews was a personal friend as well as a client of Mr. Quarles. In fact, it was through Andrews that Mr. Quarles was procured as counsel for Hurley; and it was Mr. Quarles who induced Andrews to come into court to be introduced by the prosecution as a witness in this case, obviating the necessity for a summons. Andrews was making periodic payments to Mr. Quarles of fees owed from prior and current legal representations.[3] Also, Andrews was a potential suspect as an accessory to the homicide with which Hurley was charged, as well as a suspect in illegal drug traffic related to the homicide. The potential conflict of

___

[3] Cf. *Commonwealth* v. *Soffen*, 377 Mass. 433 (1979) (convictions affirmed at least partly because, unlike this case, the relationship of the defendant's attorney to the witness or party whose interests conflicted with the defendant's had ended prior to the commencement of the attorney's representation of the defendant); *Commonwealth* v. *Wright*, 376 Mass. 725 (1978); *Commonwealth* v. *Adams*, 374 Mass. 722 (1978); *Commonwealth* v. *Smith*, 362 Mass. 782 (1973).

Mr. Quarles' loyalties between Hurley and Andrews is apparent. Mr. Quarles was potentially inhibited from cross-examining Andrews in a way that would embarrass or offend him, see *Commonwealth* v. *Geraway,* 364 Mass. 168, 179 (1973) (Tauro, C.J., and Braucher, J., dissenting), and especially in a way that could incriminate him. Further, it was reasonably foreseeable before the trial commenced that Andrews might be called to testify by the prosecution, and that his testimony would relate to substantial rather than incidental or trivial aspects of the case.

Because we conclude that, in the circumstances shown here, this simultaneous representation of a defendant and a prosecution witness by a single attorney gives rise to a genuine conflict, the issue of prejudice drops out. Thus it is not material that the record does not show that Mr. Quarles' relationship with Andrews occasioned any actual inadequacy in his representation of Hurley. The testimony of Andrews was identical to that of Hurley. In effect, Andrews bolstered the defense's theory of the case by testifying that he gave permission to Hurley to buy drugs from Wines. Nor is this a case where Mr. Quarles was given any confidential information by Andrews that might restrict his cross-examination of Andrews. Mr. Quarles did not appear to hold back on his questioning. He even went to the point of implicating Andrews in a possible conspiracy to violate the drug laws.

Nevertheless, the logic of the rule we invoke in a case of genuine conflict is clear, viz.: the defendant is not to be put to the burden, perhaps insuperable, of probing the resolve and the possible mental conflict of counsel. Both the potential for prejudice and the difficulty of proving it are apparent, particularly as to things that may have been left not said or not done by counsel.

In summary, we have identified a genuine conflict in this case where defense counsel was attorney for a person in ongoing and substantial legal matters, whose testimony could potentially incriminate him, and who foreseeably would be

produced, and was produced, as a significant prosecution witness.

Clearly the responsibility here lay with defense counsel. Although the type of conflict shown here is not precisely described in rules of the court dealing with the defense function, see S.J.C. Rule 3:22A, Standards Relating to the Defense Function, DF 6, 377 Mass. 929 (1979) (mentioning only the rules for representation of joint defendants) there was ample notice in the cautionary language of *Geraway*, *supra*, as well as subsequent opinions of this court. See cases cited, *supra* note 3. The reversal here fairly may be said to be the result of error of counsel, rather than judicial error. Cf. *Commonwealth* v. *Earltop*, 372 Mass. 199, 204 (1977) (Hennessey, C.J., concurring).

We turn now to the additional assignments of error argued by Hurley, since they may arise again at a new trial. We also discuss Cobb's contentions, in order to demonstrate that there was no error as to him, and that the judgments against him are to be affirmed.

2. An assignment of error argued by both Cobb and Hurley relates to the efforts of the prosecution to impeach the credibility of the witness Sally Leddy. On direct examination Leddy was questioned by the prosecuting attorney as to whether she had overheard the telephone call made by the defendants to Robert Andrews from 13 Gay Road. She responded that she did not hear the telephone conversation and that she did not know whether or not the defendants had made a telephone call from 13 Gay Road on the night of the killing. She also testified that she did not remember stating to the police that she had overheard this conversation. In order to impeach Leddy's credibility, the prosecution introduced two separate statements which she had previously made to police Officers Tuttle and Sinatro. Officer Tuttle testified that Leddy had told him that she had overheard the defendants' telephone conversation with Robert Andrews in which they had asked Andrews for permission to return to 14 Echo Road in order to kill Wines. Officer Sinatro testified that Leddy had made a similar statement to

him, an account of which was recorded in an affidavit for a search warrant.

The defendants offer three reasons why Leddy's prior inconsistent statements were not admissible under G. L. c. 233, § 23, which provides: "[T]he party who produces a witness shall not impeach his credit by evidence of bad character, but may contradict him by other evidence, and may also prove that he has made at other times statements inconsistent with his present testimony; but before proof of such inconsistent statements is given, the circumstances thereof sufficient to designate the particular occasion shall be mentioned to the witness, and he shall be asked if he has made such statements, and, if so, shall be allowed to explain them." First, the defendants point to the fact that Leddy testified that she could not remember making these statements to Officers Tuttle and Sinatro. From this they argue that under *Commonwealth* v. *Chin Kee,* 283 Mass. 248 (1933), the prior statements do not qualify as "inconsistent" with Leddy's testimony. However, the defendants' reliance on *Chin Kee* is misplaced. In that case the witness's in-court testimony was that she could not recall what a previous witness had said to her outside of court. We found that impeachment of this witness with her own prior statement concerning what the previous witness had told her outside of court was improper, for the prior statement did not contradict the present testimony, i.e., a lack of memory. Leddy's present testimony regarding the telephone calls is not premised on a lack of memory, but rather on a denial that she ever overheard the conversation. Her prior statements to Tuttle and Sinatro, therefore, do contradict that denial.

The most instructive case on this point is *Commonwealth* v. *Reddick,* 372 Mass. 460, 463 (1977). In that case the witness testified that he listened on an extension during the defendant's telephone conversation, but denied hearing what the defendant said. The prosecution then read to the witness questions and answers from a statement the witness had given the police concerning the contents of the tele-

phone call. The prosecution thus elicited testimony from the witness that he did not remember making such statements. We stated the rule that "[w]here a party is surprised by the testimony of his own witness that he does not remember relevant facts, . . . the party will not ordinarily be allowed to introduce prior statements of the witness concerning those facts," under G. L. c. 233, § 23, "because the legitimate value of the statements as contradictions of the purported failure to remember would usually be slight, while the danger that the jury would give affirmative testimonial value to the statements would be great," quoting from *Langan* v. *Pianowski*, 307 Mass. 149, 151 (1940). We found no violation of the quoted principle because "[t]he witness went beyond saying he did not remember. He said he did not hear what the defendant said." *Id.* In the instant case Leddy testified that she could not remember making the statements to the police, but she also denied overhearing the defendants' telephone conversation. Thus this case directly parallels, and is controlled by, *Reddick.*

As a second ground for excluding the prior inconsistent statements, the defendants argue that no proper foundation was laid for their admisssion. We do not agree. In order for a prior inconsistent statement to be admissible under G. L. c. 233, § 23, the witness must ordinarily be apprised of the time, place, and nature of the prior statement and be given an opportunity to explain it. *Commonwealth* v. *La-France*, 361 Mass. 53, 57 (1972). In this case the prosecuting attorney took appropriate steps to comply with this rule.

Officer Sinatro was identified in the court room, and Leddy acknowledged that she had talked with him in the course of the investigation. The prosecutor asked her if she spoke with Sinatro at her home on Gay Road the morning after the crime. Leddy admitted she spoke with police officers at that time but did not recall speaking with Sinatro about the telephone conversation. She also admitted speaking with Officer Tuttle at the police station the day after the killing. Tuttle's police report, containing her statements, was shown to Leddy on the stand to refresh her recollection,

but she maintained that she did not remember making the statements. It was not necessary specifically to ask the witness to explain the prior statements once she had testified that she had no recollection of having made them. *Commonwealth* v. *Festa*, 369 Mass. 419, 426 (1976).

Finally, the defendants contend that although the jury were given appropriate instructions limiting the effect of the prior inconsistent statements to the impeachment of Leddy's credibility, it constituted reversible error to admit them because their prejudicial effect outweighed their impeachment value. In support of this contention, the defendants rely on *Commonwealth* v. *Pimental*, 5 Mass. App. Ct. 463 (1977). In that case, a witness for the prosecution testified that she had not seen the fatal fight between the defendant and the victim. The Appeals Court ruled inadmissible an earlier statement made by this witness to the effect that she had observed the fight and that the defendant had been the aggressor throughout the entirely one-sided fray.

*Pimental*, however, is distinguishable from the instant case. In *Pimental* the inconsistent statement constituted the only information before the jury — other than the testimony of the defendant — going to the heart of the critical question of who had been the aggressor and who had acted in self-defense. *Id.* at 467-468. In contrast, there was ample evidence in the case at bar on the issue of premeditation. The motive for the killing could be inferred from the earlier confrontation between Wines and Cobb. The lapse of time from the initial confrontation to the shooting militated against a manslaughter theory. Premeditation also was suggested by the defendants' deliberate securing of guns. Moreover, there was testimony by Elizabeth Kerr that as Cobb approached Wines in the kitchen of the Kerr house, he pointed his gun at Wines and stated, "No one pushes me around." As this review of the evidence makes clear, the potential prejudicial effect of the prior statements in this case was much less than the potential for prejudice in *Pimental.*

*Pimental* is further distinguished from the instant case in that here the judge gave appropriate limiting instructions to the jury, both at the conclusion of Sinatro's and Tuttle's testimony and during the final charge. In *Pimental* the judge did not give the requisite limiting instructions until five days after the statement had been admitted, thus clearly increasing the danger of prejudice.

Two additional cases in which this court approved the introduction of prior inconsistent statements for impeachment purposes lend further support to our conclusions here. In *Commonwealth* v. *Swenson,* 368 Mass. 268, 271 (1975), a prosecution witness, who was unable or unwilling to make an in-court identification of the defendant, stated that he had not previously made a photographic identification of the defendant outside the court room. We ruled that the trial judge properly admitted a police officer's testimony that the witness had made such an identification. In *Commonwealth* v. *LaFrance,* 361 Mass. 53, 57 (1972), a witness provided the defendant with an alibi to manslaughter by testifying that the defendant had been with him and not at the scene of the killing. We ruled that it was proper to impeach this witness with his prior statement that he and the defendant had been involved in the homicide. Despite the significance of identification and alibi evidence in criminal cases, we did not find that the potential prejudicial effect warranted exclusion of such statements in *Swenson* and *La-France.* Leddy's prior statements in this case possessed no greater potential for prejudice; therefore they were properly admitted.

3. The defendant Cobb maintains that the judge instructed the jury erroneously on the issues of intoxication, intent, self-defense, and the burden of proof. We find no such errors.

In a case replete with witnesses' references to alcohol and drugs, the judge properly decided that the jury should know the effect of intoxication on criminal responsibility. Cf. *Commonwealth* v. *King,* 374 Mass. 501, 507-508 (1978). He correctly stated the law that intoxication does not excuse or

mitigate any crime except that one who is rendered mentally incapable of deliberate premeditation cannot be convicted of first degree murder on a theory of deliberately premeditated malice aforethought. *Commonwealth* v. *Johnson*, 374 Mass. 453, 461 (1978). The method and extent of a charge to the jury are in the judge's discretion, *Commonwealth* v. *Otero*, 356 Mass. 724 (1969), and we conclude that there was no abuse of discretion in this case.

Cobb argues further that he was prejudiced by the judge's failure to charge the jury adequately on intent as it affects a joint enterprise. The judge stated twice that "[e]ach participant must have the criminal intent to commit the specific crime with which he is charged." We find that this is a correct and adequate statement of the intent necessary to find an accomplice guilty of murder in a joint enterprise. See *Commonwealth* v. *Scanlon*, 373 Mass. 11, 12 (1977).

The judge's charge included a thorough delineation of the possible self-defense rights of the defendants and the victims and of the right of Hurley to use force in defense of Cobb. Cobb contends that this was confusing to the jury and that the charge should have been limited to the self-defense rights of the defendants, as Cobb had requested. However, there was evidence to suggest that Wines had a right of self-defense and that Hurley might have acted in defense of Cobb. Therefore, the judge properly performed his duty in instructing the jury on these matters. See *Commonwealth* v. *Feci*, 235 Mass. 562, 569 (1920).

Cobb also contends that the charge left the burden of proof as to self-defense on the defendant. Although this case was tried prior to our decision in *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976) (establishing that when the issue of self-defense is properly before the trier of fact, the Commonwealth must, as a matter of due process, prove beyond a reasonable doubt that the defendant did not act in self-defense), the charge complies with the rule of that case. This is demonstrated by the following excerpt from the charge: "The first thing I want to say to you about self defense is as to the burden of proof. You may have the feeling

that, because the defendants basically raised the issue of self defense, they have the burden of proving it, and that's not so. The burden of the Commonwealth to prove the essential elements of the crime beyond a reasonable doubt never shifts. Part of the burden of the Commonwealth is to prove an unlawful homicide beyond a reasonable doubt. If the evidence satisfies you it was lawful homicide because there was a lawful exercise of self defense, obviously the Commonwealth has failed to prove an essential element; they have failed to prove an unlawful killing. So don't misplace the burden of proof."

Cobb argues finally that the charge also misplaced the burden of proof as to whether there was reasonable provocation of the defendant permitting a finding of voluntary manslaughter. "[W]hen there is some evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion." *Commonwealth* v. *Greene,* 372 Mass. 517, 519 (1977). In no way did the judge's charge contravene this principle. The judge stated repeatedly that the Commonwealth bears the burden of proving every element of the offense beyond a reasonable doubt. He instructed the jury that malice is an essential element of murder, and that an intentional killing done on reasonable provocation is not done with malice and is therefore not murder but voluntary manslaughter. Thus it is clear that the judge's charge properly placed the burden on the Commonwealth to prove the absence of reasonable provocation.

4. Cobb argues that the judge erred in admitting as evidence a photograph of the victim's heart used by the medical examiner in conjunction with his description of the damage done by the fatal gunshot. It is Cobb's contention that under *Commonwealth* v. *Richmond,* 371 Mass. 563 (1976), and *Commonwealth* v. *Allen,* 377 Mass. 674 (1979), the photograph should have been excluded because its evidentiary value was overwhelmed by its prejudicial effect on the jury. Both of those cases are clearly distinguishable from the instant case in that they involved photographs depicting

post mortem damage to the victim's body caused by forces other than the defendant. Here the photograph depicted only the damage done to the heart by the defendant's gunshot. Moreover, the witness used the photograph to demonstrate where the wadding of the shotgun shell was lodged; this wadding later became part of the ballistic evidence linking the defendants to the crime. Therefore, we find that the defendant has not carried the "heavy burden" of showing that the judge abused his discretion by ruling that the photograph was not "so inflammatory in nature as to outweigh its probative value." *Commonwealth* v. *Richmond, supra* at 564.

5. The defendant Cobb alleges that it was error for the judge to deny motions for directed verdicts of not guilty made at the close of the Commonwealth's case on the issues of murder in the first and second degree. We find no error because "the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979). The initial confrontation between the victim and the defendants suggested a motive for the killing. The defendants' acquisition of guns and return to the Kerr home suggested premeditation, as did Elizabeth Kerr's testimony that Cobb pointed his gun at Wines and stated, "No one pushes me around." Finally, Cobb's stabbing of Wines after Hurley's devastating shotgun blast suggested that the defendants planned to kill the victim and not simply subdue him.

6. The defendant Cobb argues error resulted from the court's refusal to order the prosecution to reveal the addresses of its witnesses. In these circumstances, the judge's action may be reversed only if he abused his discretion. *Commonwealth* v. *MacDonald,* 368 Mass. 395, 397 (1975). Although it is preferable for the judge, based on representations of counsel or witnesses, to make an express finding that disclosure of the addresses would create an unwarranted

threat to the safety of the witnesses, it is abundantly clear that in this case the threat was "inherent in the situation." *McGrath* v. *Vinzant,* 528 F.2d 681, 684 (1st Cir. 1976). Moreover, the denial of addresses occasioned no prejudice to the defendant. This was not a situation where the prosecution prevented defense access to witnesses, see *Commonwealth* v. *Balliro,* 349 Mass. 505, 516 (1965), for the assistant district attorney offered to make the witnesses available to defense counsel for an interview. Therefore, we find no abuse of discretion on the part of the judge.

Cobb argues further that there was error in the judge's refusal to order discovery of police reports including a search warrant containing the statement made by Leddy to Officer Sinatro about the defendant's telephone call. As was the case with the witnesses' addresses, the denial of discovery of police reports was within the sound discretion of the judge. *Commonwealth* v. *Sheeran,* 370 Mass. 82, 86 (1976).

During the lobby conference regarding pretrial motions, Cobb's attorney stated to the judge that his motion to inspect statements of witnesses had been complied with. See *Commonwealth* v. *Lewinski,* 367 Mass. 889, 902 (1975) (ruling that a defendant may move for discovery of the relevant prior written statements of prosecution witnesses, and that if the motion is granted the statements must be delivered to defense counsel not later than the close of the witnesses' testimony). However, during the trial when Officer Sinatro testified to the statement Leddy made to him which was contained in the search warrant, Cobb's attorney objected on the ground that he had never received a copy of the warrant as a witness statement.

At this point, a dispute arose at the bench between the attorneys for the prosecution and the defense over whether the assistant district attorney had indeed given the document to defense counsel. The judge stated that he would consider an appropriate motion by defense counsel for relief founded on a violation of an order to provide witness statements. No such motion was ever made. Both defense lawyers were satisfied to receive a copy of the search warrant

affidavit at that time. After studying the documents Cobb's lawyer declined the prosecution's offer to suspend examination of the witness. We find that, given the factual dispute, the judge did not abuse his discretion in stating that he would deal with this alleged noncompliance with discovery orders only on an appropriate motion. The defense counsel's failure to pursue this course, and his acceptance of the copy of the document and acquiescence in further examination of the witness, all serve to indicate that the present claim of error is an afterthought not worthy of our attention.

7. It follows that as to Hurley the judgment is reversed and the verdict is set aside. He is to have a new trial. The judgment as to Cobb is affirmed. Further, on consideration of the law and the evidence, we find no reason to exercise our power under G. L. c. 278, § 33E, to order a new trial or alter the verdict in Cobb's case, or grant any other relief to Hurley.

*So ordered.*