## COMMONWEALTH vs. BRIAN P. PIRES.

Plymouth. April 6, 1983. — July 12, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel, New trial, Instructions to jury, Polygraphic test. *Conflict of Interest.*

The defendant in a murder case failed to demonstrate a conflict of interest or prejudice resulting from his defense counsel's joint representation at a probable cause hearing of the defendant and his brother, against whom no probable cause was found. [659-662]

The defendant in a murder case was not denied effective assistance of counsel by his attorney's partial reliance on the results of polygraph examinations given to the defendant and his brother in determining that the brother was not a suspect in the case and by the attorney's failure to build a defense on the brother's alleged guilt, where there was a lack of any evidence that the brother, rather than the defendant, had committed the murder. [662-663]

The record in a criminal case did not support the defendant's contention that his attorney's conduct of the trial was such as to deny the defendant effective assistance of counsel. [663]

At a murder trial, there was no error in the judge's instructions to the jury on circumstantial evidence and proof beyond a reasonable doubt. [664]

A defendant convicted of murder was not entitled to a new trial on the basis of testimony by witnesses to alleged admissions by the defendant's brother that he had committed the murder where much of this evidence was known to the defendant before trial and where the judge did not believe the testimony concerning the brother's involvement in the murder. [664-666]

INDICTMENT found and returned in the Superior Court Department on October 16, 1980.

The case was tried before *Steadman*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*David A. McLaughlin & Mary Alice S. McLaughlin* for the defendant.

*Robert S. Sinsheimer,* Assistant District Attorney (*John P. Corbett,* Assistant District Attorney, with him) for the Commonwealth.

NOLAN, J.  The defendant was indicted for the murder of John J. Silva.  He was found guilty of murder in the second degree.  The defendant raises the following issues:  (1) the ineffective assistance of counsel because of trial counsel's conflict of interest at a probable cause hearing; (2) the reliance on polygraph examination results; (3) the ineffective assistance of counsel in the conduct of the trial; (4) erroneous jury instructions on circumstantial evidence and on reasonable doubt; and (5) error in the denial of his motion for a new trial.  We allowed his application for direct appellate review.[1]  There was no error.  We affirm the judgment of conviction.

The jury could have found the following facts surrounding the death of John Silva.  Before midnight on August 8, 1980, the defendant, his brother Patrick Pires, his cousin Mark Pires, and a friend went to the White Cliffs Lounge, in Plymouth.  The defendant and the victim quarreled, and at closing time, 1 A.M., they left the lounge together.  The victim had placed a wrestling hold on the defendant's neck as they were walking from the lounge to the parking lot.  Near the edge of the parking lot, the defendant plunged a knife into the victim's chest.  There was evidence from which the jury could infer that Patrick was near the defendant at the moment of the attack.  The victim staggered, regained his footing, but fell again.  The defendant moved quickly to his automobile and entered on the driver's side.  His brother Patrick and their cousin Mark got into the car.  A small crowd gathered around the victim, who was gasping for air.  Some spectators saw the defendant leaving the parking lot and tried to stop him, but he accelerated his car

---

[1] We do not review this appeal under G. L. c. 278, § 33E. See *Commonwealth* v. *Davis,* 380 Mass. 1, 16-17 (1980).

and left the area. The victim died from the stab wound. A police broadcast of the description of the defendant's car led to the eventual arrests of the defendant, Patrick, and Mark.

The defendant's family retained Mr. Walter Stone, a member of the Rhode Island bar, to consult with the defendant and Patrick and later to represent both of them at a probable cause hearing in a District Court. Mark Pires was represented by another attorney. Probable cause was found only in the case against the defendant, who was subsequently indicted for the murder. Mr. Stone continued to represent the defendant throughout his trial, which began on January 20, 1981, and ended with the verdict on January 26, 1981. On May 7, 1981, the defendant, then represented by his present attorney, filed a motion for a new trial, predicated, in the main, on allegations of ineffective assistance of counsel by reason of Mr. Stone's divided allegiance at the probable cause hearing and the allegedly resultant cover-up of Patrick's guilt as the one who stabbed the victim. After a hearing which lasted several days, the judge denied the motion in an order which contained specific findings and conclusions.

1. *Ineffective assistance of counsel and conflict of interest.* The defendant invokes the Sixth and Fourteenth Amendments to the United States Constitution as well as art. 12 of the Massachusetts Declaration of Rights in arguing the denial of effective assistance of counsel caused by Mr. Stone's alleged divided loyalties in representing Patrick and the defendant at the probable cause hearing. We have spoken to this problem of diluted advocacy in a number of cases within the last five years. See, e.g., *Commonwealth v. Hodge,* 386 Mass. 165, 168-170 (1982); *Commonwealth v. Michel,* 381 Mass. 447, 451-457 (1980); *Commonwealth* v. Cobb, 379 Mass. 456, 459-462, vacated sub nom. *Massachusetts* v. *Hurley,* 449 U.S. 809 (1980), appeal dismissed, 382 Mass. 690 (1981); *Commonwealth* v. *Soffen,* 377 Mass. 433, 436-438 (1979); *Commonwealth* v. *Davis,* 376 Mass. 777, 780-787 (1978); *Commonwealth* v. *Leslie,* 376 Mass. 647, 651-656 (1978), cert. denied, 441 U.S. 910 (1979); *Com-*

*monwealth* v. *Bolduc,* 375 Mass. 530, 540-543 (1978); *Commonwealth* v. *Adams,* 374 Mass. 722, 730-731 (1978). The United States Supreme Court spoke to this problem in *Cuyler* v. *Sullivan,* 446 U.S. 335 (1980). The most recent case to come to our attention is *Wilson* v. *Morris,* 699 F.2d 926 (7th Cir. 1983). The conflict of interest issue is also the subject matter of a disciplinary rule of this court. S.J.C. Rule 3:07, DR 5-105, 382 Mass. 781 (1981). See ABA Code of Professional Responsibility, Canon 6 (1978).

Not all of the cases cited address the problem of joint representation by one lawyer of two or more defendants in a single trial. None of them presents the precise issue of the instant case — joint representation by one attorney of two defendants at a probable cause hearing from which, after indictment, one of them emerges as a defendant who is represented by the same attorney at trial. However, from these cases can be culled certain principles which are instructive and helpful in their application to this case.

As might be expected, we discourage joint representation because of the potential problems that lurk therein, see *Commonwealth* v. *Adams, supra* at 731, but this is not to say that a conflict of interest arises "solely because there is joint representation." *Commonwealth* v. *Michel, supra* at 451. Nor is it sufficient to show merely a possible conflict of interest. It is the defendant's burden to demonstrate, without relying on speculation, that joint representation resulted in an actual conflict of interest. *Commonwealth* v. *Soffen, supra* at 438. If he proves that there is a genuine conflict, he is not required to shoulder the additional burden of proving actual prejudice or adverse effect on his counsel's performance under art. 12, see *Commonwealth* v. *Hodge, supra* at 169, although he probably does carry the burden of demonstrating that the actual conflict adversely affected his lawyer's performance if he claims a violation of his Sixth Amendment rights, see *Cuyler* v. *Sullivan, supra* at 350. An actual conflict exists when the lawyer is actively representing conflicting interests, *id.,* or when there is tension between the interests of one client of the attorney and the in-

terests of another client of the same attorney. *Com-monwealth* v. *Michel, supra.* It has been recognized that if an attorney cannot use his best efforts to exonerate one defendant for fear of implicating another defendant (assuming joint representation), he is face to face with an actual conflict of interest. *United States* v. *Unger,* 665 F.2d 251, 255 (8th Cir. 1981). The other side of the same coin is the actual conflict that arises "whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *Foxworth* v. *Wainwright,* 516 F.2d 1072, 1076 (5th Cir. 1975), quoted with approval in *Turnquest* v. *Wainwright,* 651 F.2d 331, 333 (5th Cir. 1981).

We now apply these principles to the instant case. The defendant argues that there existed a "per se conflict of interest" when Stone represented both Patrick and the defendant at the probable cause hearing. We have already pointed out that there is no "per se" or automatic conflict solely because of joint representation. *Commonwealth* v. *Michel, supra* at 451. The defendant argues that an actual conflict of interest existed at the probable cause hearing. The record does not carry the day for the defendant on this issue. The Commonwealth called eight witnesses at the probable cause hearing. Mr. Stone cross-examined six of these witnesses. He did not cross-examine Joseph Silva, a cousin of the victim, but his testimony was largely duplicative of the testimony of the other eyewitnesses. Mr. Stone did not cross-examine the arresting officer but this failure appears entirely harmless. Mr. Stone conducted himself at the probable cause hearing in a manner consistent with at least one of the purposes of such hearing, i.e., discovery of the Commonwealth's case against his clients. See *Myers* v. *Commonwealth,* 363 Mass. 843, 847-848 (1973). The Commonwealth's evidence against the defendant was strong. There was no evidence introduced against Patrick nor does the record reflect that Mr. Stone was privy to any evidence against Patrick at this time. Mr. Stone's argument to the

judge at the conclusion of the hearing simply pointed out the absence of any evidence against Patrick. The defendant has failed to meet his burden of proving either a possible conflict or an actual conflict by Mr. Stone's joint representation of the defendant and Patrick at the probable cause hearing.

At the time of the trial, Mr. Stone no longer represented Patrick and the record is bare of any suggestion that he was aware of Patrick's alleged guilt at this time or that he had been given confidential information that might inhibit his advocacy of the defendant's defense. See *Commonwealth v. Smith,* 362 Mass. 782, 783-784 (1973). Alleged admissions of guilt by Patrick did not surface until after the trial and the judge found specifically that Patrick did not admit his guilt to Mr. Stone. Patrick did not testify nor even appear at the trial. There is nothing in the record to suggest that the defendant's rights were compromised or that anything less than a vigorous defense was conducted by Mr. Stone at trial. In short, the defendant was given "the untrammeled and unimpaired assistance of counsel free of any conflict of interest and unrestrained by commitments to others." *Commonwealth* v. *Davis,* 376 Mass. 777, 780-781 (1978).

2. *The reliance on polygraph examination results.* The defendant argues that he was deprived of his constitutional right to effective assistance of counsel because Mr. Stone failed to build his defense on Patrick's guilt. Mr. Stone testified at the hearing on the motion for a new trial that he arranged for polygraph examinations of both Patrick and the defendant. Patrick was tested and "passed" the test. The defendant was tested twice and "failed" twice. The defendant attacks the accuracy of the tests because there was no post-test interview and because distortive influences such as outbursts from the defendant's father and mother in the office of the examiner surrounded the administration of the defendant's second test and because his brother should not have been considered a fit subject of polygraph examination. Mr. Stone conceded that after reviewing the

test results, he no longer considered Patrick a suspect. The weakness of the defendant's argument is in its foundation. It presupposes the guilt of Patrick despite the absence of evidence of his guilt. Mr. Stone's action in submitting the defendant and Patrick to polygraph examinations sprung from an abundance of caution.

The cases cited by the defendant speak only to the admissibility of polygraph evidence, not to its use as an investigative tool. He cites no authority to support his argument that the defendant was denied effective assistance of counsel because his attorney relied, in part at least, on the result of the polygraph test in conducting his defense. We have found no case to support his position.

3. *Ineffective assistance of counsel during trial.* The defendant cites several instances during the opening statement to the jury and during the trial when, he urges, his trial counsel fell short of the mark in presenting his defense. Those claims which were advanced at the hearing were resolved against the defendant. In fact, the judge found specifically that Mr. Stone "conducted himself in a professional manner," and that the defendant was not denied effective assistance of counsel. Our own review of the record satisfies us that the judge's conclusion was correct. Some of the arguments as to alleged ineffective assistance of counsel are raised for the first time on appeal and, therefore, are not properly before us.[2] See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 234-235 (1973). Trial counsel's conduct did not fall "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Any imperfections which are revealed by hindsight do not entitle the defendant to relief. See *Commonwealth* v. *Johnson,* 374 Mass. 453, 465 (1978). However, we have examined the record to assure ourselves that there was no miscarriage of justice. See *Commonwealth* v. *Johnson,* 379 Mass. 177, 178 (1979).

---

[2] We note that at the hearing of the motion for a new trial, the defendant was represented by the attorney who represented him on appeal.

4. *Jury instructions.* There were no requests for specific instructions and no objections to the judge's charge were interposed. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). However, we review the charge to satisfy ourselves that there has been no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Berth,* 385 Mass. 784, 786-787 (1982). The defendant argues that the judge's instruction on circumstantial evidence was incomplete. The charge, however, contained all the elements necessary for an understanding of the nature of circumstantial evidence. After distinguishing direct evidence. from circumstantial evidence, the judge carefully followed the teaching of *Commonwealth* v. *Webster,* 5 Cush. 295, 310 (1850), on circumstantial evidence. Immediately following a description of circumstantial evidence, he gave an accurate instruction on the nature of an inference, a concept intimately related to circumstantial evidence. There was no error.

The defendant also urges us to find error in the instruction on reasonable doubt. The defendant concedes that the "time-tested and widely approved language of *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850)," was used. *Commonwealth* v. *Williams,* 378 Mass. 217, 235 (1979). However, he urges us to condemn the language "moral certainty" and "abiding conviction, to a moral certainty." *Commonwealth* v. *Webster, supra* at 320. We are not prepared to do this. See *Commonwealth* v. *Tavares,* 385 Mass. 140, 147 (1982). Nor are we prepared to condemn all "negative" language which tells the jury what does *not* constitute proof beyond a reasonable doubt. Conceptually, such proof is sufficiently metaphysical that it may be helpful to a jury to know what does not measure up to the standard if such instruction is accompanied by *Webster* language as to the active ingredients of the proof. See *Commonwealth* v. *Seay,* 376 Mass. 735, 746 (1978). The charge in the instant case was without reversible error.

5. *Motion for a new trial.* The defendant filed a motion for postconviction relief on September 24, 1981. Mass.R. Crim.P. 30(b), 378 Mass. 900 (1979). The judge conducted a hearing for several days during which twenty-one witnesses

were called. The focus of the motion was on two issues: (1) ineffective assistance of counsel, to which we have already spoken earlier in this opinion, and (2) newly discovered evidence. The evidence which is characterized as newly discovered consisted, in the main, of witnesses testifying to alleged admissions by Patrick that he was the killer. The defendant admitted that he did not tell the truth at trial, but urged the judge to believe his testimony that it was his brother, Patrick, who delivered the fatal blow and not himself, although he concedes that he punched the victim in the jaw. Several witnesses came forward (for the first time) and told of Patrick's confessions of guilt. Most of these alleged confessions by Patrick occurred before the trial of the defendant, but the witnesses did not testify to them at trial. Some of these witnesses attended the trial, heard the incriminating testimony which led the jury to convict the defendant but they did not come forward at the trial either to testify or to inform Mr. Stone of Patrick's alleged involvement. There was no error in the implicit conclusion of the judge that the testimony as to Patrick's involvement was not entitled to belief. The judge found that Patrick was available to the defendant at trial and at the motion hearing, but the defendant did not produce him. He also found that Mr. Stone was not advised of Patrick's alleged inculpation until after trial.

The judge correctly concluded that the new evidence on which the defendant relied was not "newly discovered" as that phrase is descriptive of a ground for a new trial. Much of the evidence was known to the defendant before the trial. See *Commonwealth* v. *Toney*, 385 Mass. 575, 579, 588 (1982); *Commonwealth* v. *Kelley*, 370 Mass. 147, 152 (1976).

Rule 30(b) provides that a new trial may be granted "if it appears that justice may not have been done." Our cases have consistently held that the motion for new trial is a matter for the sound discretion of the trial judge unless the trial was "infected with prejudicial constitutional error." *Lannon* v. *Commonwealth*, 379 Mass. 786, 788 (1980). See,

e.g., *Commonwealth* v. *Cook,* 380 Mass. 314, 320 (1980). In this case, the denial of the motion was not error. The judge simply did not believe many of the witnesses and he was not compelled to believe them. See *Commonwealth* v. *Cassesso,* 360 Mass. 570, 575 (1971), judgment vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972).

Despite the defendant's protestations that the judge used an improper standard in denying the motion for a new trial it is clear from his findings and conclusions that his denial was founded on sound principles. He recognized the discretionary criterion. His decision contains an analysis of all the evidence and the defendant's arguments. He correctly concluded that the weakness of the defendant's case was in the facts. There was no error.

*Judgment affirmed.*