## COMMONWEALTH vs. LEROY WALTER.

Berkshire.   October 4, 1984. — December 5, 1984.

Present: GRANT, KAPLAN, & FINE, JJ.

*Practice, Criminal,* Assistance of counsel, New trial. *Conflict of Interest.*

A criminal defendant was not deprived of the effective assistance of counsel
by reason of his attorney's representation of a potential defense witness
who had charges pending against him in the same county at the time of
the defendant's trial, where that individual was not shown to have im-
parted any confidential information to the attorney and where the attorney
withdrew from representation of the potential witness as soon as he
realized or should have realized that the potential witness, if called by
the defense, might have material, or nontrivial, testimony to offer.
[86-91]

At a criminal trial in which the defendant's attorney also represented a poten-
tial defense witness, the judge's failure to warn the defendant of the
risks of joint representation or to inquire of him whether he wished to
have a different attorney appointed to represent him did not amount to ·
reversible error, where the attorney was reasonably prompt in withdraw-
ing from the dual representation once an actual conflict of interest arose.
[91-92]

A judge hearing a motion for a new trial of a criminal case properly declined
to rule on issues which could have been, but were not, raised during
the course of the trial or on direct appeal of the defendant's conviction.
[92]

MOTION for a new trial filed in the Superior Court Depart-
ment on October 21, 1982.

The proceeding was heard by *Raymond R. Cross,* J.

*Wendy Sibbison (William C. Newman* with her) for the de-
fendant.

*Lee Diane Flournoy,* Assistant District Attorney, for the
Commonwealth.

FINE, J. In March of 1981, Leroy Walter was convicted of
unarmed robbery. We affirmed the conviction in *Commonwealth*

v. *Walter,* 14 Mass. App. Ct. 1303 (1982).[1] In October of 1982, Walter, pro se, filed a motion for a new trial. Counsel was appointed to represent him, and a hearing on the motion was held before the judge who had presided over the trial. The motion was denied in December of 1982 and Walter appeals from that ruling. We affirm.

Walter contends that his trial counsel, Mr. Andrew Campoli of the Massachusetts Defenders Committee, had a genuine conflict of interest because he also represented one Duane Carter on unrelated charges pending at the time of Walter's trial. Carter's connection to Walter's case is spelled out in the discussion which follows. Although Mr. Campoli withdrew as Carter's attorney on the second day of Walter's trial, Walter contends that this withdrawal came too late to cure the violation of his constitutional right to be represented by an attorney without a conflict of interest.

At the jury trial, George Johnson gave the following account of the crime. At about 2:00 A.M., on January 8, 1981, shortly after he left The Market, a bar in Pittsfield, someone jumped him from behind. The assailant beat Johnson about the face and stole his wallet, which contained seventy dollars. During the struggle, the assailant told Johnson to "give up the bag." Although he was not able to see the assailant, Johnson identified him as Walter by his voice. Walter had been a regular customer at a variety store owned by Johnson, who said he was familiar with Walter's voice. The two had spoken briefly in The Market shortly before Johnson left the bar and was assaulted.

At about 1:00 on the same morning, Carlos Swanson and Carter had been apprehended by the police in Pittsfield while attempting to steal a car. The two were not arrested immediately, however, and they proceeded to The Market. Two days later, on January 10, after the police arrested Swanson for the attempted car theft, they questioned him about the Johnson robbery. Swanson told the police that on the night of January 7-8 he was at The Market in the company of Carter, that

---

[1] Further appellate review by the Supreme Judicial Court was denied, 387 Mass. 1101 (1982).

he spoke with Walter there, and that Walter said he was planning to "take off" Johnson. Swanson also said that later, when he and Carter went outside the bar, he saw Walter with a club in his hand following Johnson down the street. On January 12, the police arrested Walter.

Swanson affirmed his statement before the grand jury which indicted Walter for unarmed robbery and assault and battery. He gave similar testimony at Walter's District Court probable cause hearing, except that he added the fact that outside the bar, when Walter said he was going to "take off" Johnson, Swanson was standing only inches from Walter, and Carter was "standing right there."

On February 5, 1981, the court appointed Mr. Campoli to represent Walter.[2] On the same day, Mr. Campoli was appointed to represent Carter on eight charges, including the January 7th attempted car theft. The other offenses, including breaking and entering, attempted breaking and entering, larceny, receiving stolen property, and trespassing, allegedly occurred between December 17, 1980, and January 21, 1981.

On February 11, the Commonwealth provided Mr. Campoli, in his capacity as Walter's attorney, with copies of Swanson's statement of January 10 and his grand jury testimony. Also before trial Mr. Campoli had been given a copy of the transcript of the District Court probable cause hearing. On February 13, the Commonwealth sent Mr. Campoli, in his capacity as Carter's attorney, eighteen pages of police reports and witness statements relating to the various charges against Carter. At least one of those reports referred to the arrest of Carter and Swanson for crimes committed on the night of January 7-8.

On the first day of Walter's trial, Mr. Campoli listed Carter as a possible defense witness. The trial proceeded and, after Johnson made a voice identification of Walter as his assailant, Swanson took the stand and inculpated Walter. He contradicted his pretrial statements by saying that he was alone, and not with Carter, when he saw Walter with the club outside The Mar-

---

[2] Walter also faced indictments for breaking and entering and three larcenies in a building.

ket. The first day of trial ended with Mr. Campoli in the midst of cross-examining Swanson. The cross-examination that day, among other things, included questioning about Swanson's activities with Carter on the night of January 7-8. On the following morning, Mr. Campoli requested a recess in order to obtain a police report concerning the attempted car theft. The prosecutor informed the judge at the side bar that Mr. Campoli had already received the report as discovery in the Carter case. Mr. Campoli responded that he could not be bound in one case by discovery he had been given in another case. When the prosecutor remarked that Mr. Campoli planned to call Carter as a witness, Mr. Campoli answered, "I don't know that I am." The judge granted the request for a recess.

Before trial recommenced following the recess, Mr. Campoli moved to withdraw as Carter's counsel. He said that Carter's name was mentioned throughout the police report and that "[i]t may develop Mr. Duane Carter would be called as a witness in this case. It would be an absolutely untenable position for me to attempt to represent Mr. Walters [*sic*] on the one hand and Mr. Carter on the other." Mr. Campoli said he explained the situation to Walter, but no colloquy with the defendant was conducted before the judge.[3] The judge allowed Mr. Campoli's motion to withdraw as Carter's attorney.[4]

Mr. Campoli continued to cross-examine Swanson vigorously and seriously impeached his credibility by eliciting numerous contradictions in his testimony. He did not call Carter as a defense witness.

---

[3] Mr. Campoli told the judge, "I would also like to go on record as saying I have spoken with Mr. Carter for the last fifteen minutes or so. I have also explained it to Mr. Walters [*sic*]. They both understand what has happened. I think they both concur, but I would like Mr. Duane Carter personally to express his feelings he understands what has happened, so there can be no later misunderstanding."

[4] On the pre-printed form "Statement of Reasons for Assignment of Counsel," in which the judge appointed another attorney to represent Carter, he checked off the reason stating that there was a conflict of interest between the defendant and defendants in companion cases. He also wrote, "It is not strictly a companion case — but this def [*sic*] may or may not be a witness in a case involving Leroy Walter who is defended by the P.D."

In denying Walter's motion for a new trial, the judge ruled that there was no genuine conflict of interest. His stated reasons were: (1) that there was nothing which might have indicated to Mr. Campoli that Carter would be a material witness with substantial rather than incidental or trivial testimony to offer; (2) that the defendant was not in any way prejudiced by Mr. Campoli's initial representation of both Carter and Walter or by Mr. Campoli's decision not to call Carter as a witness; and (3) that there was nothing to indicate that any real attorney-client relationship existed between Carter and Mr. Campoli or that Mr. Campoli was given any confidential information by Carter.

The defendant urges us to apply a broad standard of review and to scrutinize carefully the judge's ultimate findings and conclusions, arguing that the record on the motion is entirely documentary and that this appeal presents constitutional issues. The Commonwealth, on the other hand, urges that we defer somewhat to the trial judge whose knowledge of the case derives from his having presided over it at all relevant stages. We need not reach this question because our independent review of the record leads us to conclude that the ruling of the judge was correct.

"We begin our consideration by reviewing the cardinal principles underlying analysis of conflict of interest claims in criminal cases. First of these is the defendant's constitutional right under the Sixth and Fourteenth Amendments to the United States Constitution or art. 12 of our Declaration of Rights to an attorney unhampered or unfettered in his professional responsibility to the accused. . . . A defendant is entitled to the untrammeled and unimpaired assistance of counsel free of any conflict of interest and unrestrained by commitments to others. . . . Despite the dimension of this right, we have held that a defendant's conviction will be reversed on this basis only when the alleged conflict is supported by adequate evidence of its existence. *Commonwealth* v. *Smith,* 362 Mass. 782, 784 (1973). *Englehart* v. *Commonwealth,* 353 Mass. 561, 562, cert. denied, 393 U.S. 886 (1968). By this we mean that the defendant, on appeal, is obliged to show demonstrative proof

detailing the precise character of the alleged conflict of interest. We will not infer a conflict of interest from simply the existence of joint representation, see *Commonwealth* v. *Adams,* 374 Mass. 722, 731 (1978); *Holloway* v. *Arkansas,* 435 U.S. 475, 487-489 (1978), or out of mere conjecture or speculation as to what might have been shown at trial, *United States* v. *Alvarez,* 580 F.2d 1251, 1255 (5th Cir. 1978); *Lugo* v. *United States,* 350 F.2d 858, 859 (9th Cir. 1965)." *Commonwealth* v. *Davis,* 376 Mass. 777, 780-781 (1978). "Once a genuine conflict is shown, there is no additional requirement that prejudice be proved. . . . Moreover, if a more tenuous conflict appears, we might still reverse the judgment on a showing of material prejudice." *Commonwealth* v. *Soffen,* 377 Mass. 433, 437 (1979). See also *Commonwealth* v. *Davis, supra* at 783 (even where there is no genuine conflict, a conviction may be overturned where there is a "potential conflict coupled with a showing of material prejudice").

The parties agree that, although in this case the attorney represented simultaneously a defendant and a potential defense witness who was not called upon to testify, material prejudice has not been shown.[5] The issue, therefore, is whether before the second day of trial, it was reasonably foreseeable that there would be such tension between the interests of one client of Mr. Campoli's and those of another that there existed a genuine, as opposed to a tenuous, conflict of interest. See S.J.C. Rule 3:07, DR 5-105, as appearing in 382 Mass. 781 (1981). If the former, the defendant would not be required to show material prejudice

---

[5] Walter has not stated what Carter would have said if called as a defense witness. The only indication of what Carter might have said had he been called to testify appears in the transcript of the hearing on May 19, 1981, during which Carter pleaded guilty to various charges including the car theft. In answer to a question from the judge about that offense, he stated, "I had been inebriated most of the time as a result of family and emotional problems, what not. Quite a length of time, the middle of December to the end — 21st of January. I had a heavy influence of alcohol and there are a lot of things I don't remember. That particular incident, I can't remember the fellow's name." At the time the motion for a new trial was heard, Carter was unavailable. Mr. Campoli was not called upon to testify at the hearing on Walter's motion for a new trial.

in order to make out his claim of a constitutional violation. We may assume that, by the second day of trial, when Mr. Campoli was required to decide whether to call Carter as a defense witness, further representation of both Walter and Carter would have placed Mr. Campoli in a position of divided loyalties. Carter was his client and had criminal charges pending against him in the county in which the Walter case was being tried. Carter's appearance as a witness for a defendant in any criminal case could displease the prosecutorial staff and have adverse consequences in the disposition of his pending charges. In addition, questioning Carter in the Walter case could have incriminated Carter in his own cases since, inevitably, the interrogation would touch upon the events of the night in question, including the attempted car theft.

Simultaneous representation in such a situation has a potential for conflict which is as serious as in the case where an attorney or a law firm simultaneously represents codefendants in a joint criminal trial (*Commonwealth* v. *Michel*, 381 Mass. 447 [1980]), or when an attorney or an affiliate simultaneously represents a defendant and a witness for the prosecution (*Commonwealth* v. *Hodge*, 386 Mass. 165 [1982]; *Commonwealth* v. *Cobb*, 379 Mass. 456, vacated sub nom. *Massachusetts* v. *Hurley*, 449 U.S. 809 [1980]). To the extent that *Commonwealth* v. *Edgerly*, 390 Mass. 103, 108 (1983), might seem to suggest otherwise, we note that that case did not involve a potential defense witness who either had charges pending against him in the same county at the time of the trial or who had charges pending which were related to those of the defendant on trial. Whenever a potential defense witness has a criminal case pending in the same county, he has an interest in not affecting adversely his chances of favorable treatment and, therefore, in not testifying. And whenever a potential witness has criminal charges pending which are related to those against the defendant being tried, he has an interest in not being incriminated. Therefore, it would be in his interest not to testify.

Both the attorney and the trial judge recognized the existence of a conflict on the second day of trial and acted accordingly.

Walter argues that the cure came too late. We must ask, then, at what point in time the potential conflict of interest ripened into a genuine conflict of interest. In our view it did so as soon as the attorney realized or should have realized that Carter might have had material, or non-trivial, testimony to offer as a defense witness for Walter.[6] Thus, we must examine closely what information Mr. Campoli had during the pretrial proceedings and the first day of trial in order to determine whether it was foreseeable at that time that Carter could offer material testimony in the case.

Mr. Campoli knew before Walter's trial commenced, on the basis of discovery provided to him in Walter's case, that Swanson would state that he heard Walter make an incriminatory statement in The Market, that he saw Walter leave The Market shortly after Johnson left, and that Walter had a club in his hand. He also knew that Carter, his client, was at The Market in the company of Swanson at the time of the alleged incriminatory statement, that he left The Market with Swanson, and that he might have been in a position to overhear the incriminatory statement and to observe the victim's and Walter's departure.[7] He also knew, on the basis of discovery provided to him in Carter's case, that Carter and Swanson were charged with having committed an attempted car theft together on the same night in the same city. Based upon the discovery provided in the Walter case, Mr. Campoli could reasonably have concluded that Carter might have testimony of value to offer the Commonwealth. He was not provided with any statements of Carter concerning his observations of the incidents, however, and the prosecutor did not designate Carter as a prospective prosecution witness. Thus, there was no reason for Mr. Campoli to anticipate that a

---

[6] *Commonwealth* v. *Michel*, 381 Mass. 447 (1980), suggests that withdrawal should take place before the commencement of trial. In that case, however, the court pointed out that counsel "had two rather obvious conflicts . . . at the beginning of trial." *Id.* at 453.

[7] Although a proper pretrial investigation of the charges against Walter would have included some questioning of Carter about his observations at The Market, there is no indication that such questioning was done. See ABA Standards for Criminal Justice 4-4.1 (2d ed. 1982).

conflict would arise because his client would be called to testify for the prosecution. Nor would any of the information provided as discovery in the Walter case reasonably have led him to believe that Carter would be a helpful defense witness. He would have had to engage in pure speculation to imagine how Carter could be useful to impeach Swanson's credibility or to help the defense in any other way.

The question, then, is whether before trial Mr. Campoli should have made the connection between the information he had been provided concerning the alleged car theft and the charges against Walter. We do not think that Mr. Campoli should reasonably have anticipated that the issue of the car theft would emerge in a material way in the Walter trial. The knowledge that Carter was charged jointly with Swanson, that Swanson would testify against Walter, and that the offense allegedly occurred on the same night was insufficient to place Mr. Campoli on notice that there would be questioning of Swanson about the car theft at Walter's trial. The first time the car theft was mentioned in the Walter trial was during Swanson's direct testimony. Mr. Campoli had begun his cross-examination of Swanson and had interrogated him about the car theft before he sought to withdraw as Carter's attorney.[8] Perhaps he should have made the connection and appreciated the existence of the conflict at some time earlier, during Swanson's direct examination or during the early part of his cross-examination. We do not place any significance, however, on this slight delay — while the extent of the problem apparently was crystalizing. He acted to eliminate the conflict at a time when he still had Swanson available for further cross-examination and before he was required to decide whether to call Carter as a witness. Once Mr. Campoli had withdrawn as Carter's attorney and new counsel was appointed to represent and advise Carter about his testimony, Mr. Campoli was not under a con-

---

[8] The suggestion is made that he should have withdrawn as counsel for Walter, not Carter. There was no requirement that he select one client over the other, however, except the practical consideration that one was on trial and withdrawal in his case would have resulted in a mistrial.

tinuing duty to Carter which would have prevented him from calling Carter as a witness. See *Commonwealth* v. *Cote*, 7 Mass. App. Ct. 150, 152 (1979). No inference of improper motivation may be drawn from his decision not to do so.

The situation would be different, of course, if Mr. Campoli had been given confidential information by Carter. If he had, he would have been under a continuing duty to Carter not to use or divulge such information. S.J.C. Rule 3:07, DR 4-101(B), as appearing in 382 Mass. 778 (1981). If confidential information had been disclosed to him by Carter, he might have been restricted in his cross-examination of Swanson and he might have been influenced in his decision whether to call Carter as a witness. *Commonwealth* v. *Smith*, 362 Mass. 782 (1973). Walter, however, has made no such showing. He did not even demonstrate that Mr. Campoli discussed Carter's case with him before withdrawing as his attorney. Instead, Walter only speculates that Mr. Campoli could have received confidential information from Carter. "[A] defendant cannot rely on speculative harm caused by speculative confidential information to show that he was deprived of his constitutional rights at trial." *Commonwealth* v. *Wright*, 376 Mass. 725, 732 (1978), quoting from *United States* v. *Donatelli*, 484 F.2d 505, 507 (1st Cir. 1973). Since Mr. Campoli's cross-examination of Swanson was thorough and vigorous, the contention that Mr. Campoli may have been restricted in his cross-examination is also speculative. *Commonwealth* v. *Wright, supra*.

The failure of the trial judge to warn Walter on the record of the risks of joint representation or to question him about whether he wished to have another attorney appointed to represent him does not amount to reversible error. A prophylactic inquiry is required in cases involving joint representation of codefendants. *Commonwealth* v. *Davis, supra* at 784-785. In *Commonwealth* v. *Connor*, 381 Mass. 500, 506 (1980), such an inquiry was held necessary where the defense counsel represented several prospective prosecution witnesses, including the principal one. In both of those situations the colloquy was required as a condition precedent to the continued dual representation. Mr. Campoli, however, was reasonably prompt in with-

drawing from the dual representation once the potential conflict became an actual conflict.

Walter attributes significance to the fact that before the jury was empanelled Mr. Campoli listed Carter among the potential defense witnesses. We do not know why he did so. The names of potential witnesses are provided as a precaution to eliminate any bias on the part of the prospective jurors. Such lists often include the names of persons who do not in fact appear as witnesses in the case. We cannot assume that Mr. Campoli knew or should have known that Carter could offer non-trivial testimony for the defense merely on the basis of his having included Carter's name as a possible defense witness.

We now turn briefly to the two remaining issues presented on appeal. Walter says that the trial judge erred in denying his motion for a new trial because (1) the judge failed to hold a voir dire on the voluntariness of an admission by him to the police and failed to submit that issue to the jury, and (2) the judge, in his instructions to the jury on reasonable doubt, used modified "*Madeiros*-type" language which has since been criticized. See *Commonwealth* v. *Sheline*, 391 Mass. 279, 294-297 (1984, conviction affirmed despite *Madeiros* charge). These issues were not raised previously, either at the original trial or on direct appeal of Walter's conviction. If the motion judge does not choose to consider them, such issues are considered to have been waived unless a substantial risk of a miscarriage of justice would result. *Commonwealth* v. *Leo*, 11 Mass. App. Ct. 283, 284 (1981). Since there is no such risk here, the trial judge did not err in not considering those issues.

*Order denying motion for a new
trial affirmed.*