## COMMONWEALTH vs. LEROY WALTER.

Berkshire.   October 8, 1985. — January 16, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Criminal,* Assistance of counsel. *Conflict of Interest.*

A criminal defendant was not entitled to a new trial on the ground that his
  attorney's representation of a potential defense witness on unrelated
  charges at the time of the defendant's trial had created a genuine conflict
  of interest which deprived him of the effective assistance of counsel,
  where the potential witness did not ultimately testify and where neither
  the pretrial discovery materials received by the attorney nor anything
  learned by him up to the time of his withdrawal as counsel for the
  potential witness after the first day of trial could reasonably have led
  him to believe that that individual might serve as a significant witness.
  [554-559]
Where, in the circumstances, no genuine conflict of interest had existed,
  the judge at a criminal trial was not required to conduct a colloquy with
  the defendant regarding the defendant's desire that his attorney continue
  to represent him following the attorney's withdrawal from representation
  of a potential defense witness on unrelated charges. [559]
Where the record of a criminal trial revealed nothing that the testimony of
  a certain potential witness could have added to the defendant's case,
  there was no prejudice to the defendant as the result of any potential
  conflict of interest arising from his attorney's having represented that
  individual, on unrelated charges, during a period ending on the second
  day of the defendant's trial. [559]

INDICTMENT found and returned in the Superior Court De-
partment on February 3, 1981.

Following the order of the Appeals Court in 14 Mass. App.
Ct. 1303 (1982), a motion for a new trial was heard by *Raymond
R. Cross,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Wendy Sibbison & William C. Newman* for the defendant.

*Lee Diane Flournoy,* Assistant District Attorney, for the
Commonwealth.

LYNCH, J. On March 31, 1981, a jury convicted the defendant, Leroy Walter, of unarmed robbery. The Appeals Court summarily affirmed the conviction, 14 Mass. App. Ct. 1303 (1982), and we denied further appellate review. In October of 1982, the defendant, pro se, filed a motion for a new trial and counsel was appointed to represent him. That motion was denied and the Appeals Court affirmed, *Commonwealth* v. *Walter,* 19 Mass. App. Ct. 82 (1984). We granted the defendant's petition for further appellate review. The defendant claims that his motion for a new trial was improperly denied because his trial attorney's (Andrew T. Campoli's) concurrent representation of a potential defense witness (Duane Carter) created a genuine conflict of interest which denied the defendant effective assistance of counsel.[1] The defendant further contends that trial counsel's withdrawal as Carter's counsel on the second day of the defendant's trial did not suffice to cure the conflict and that he was materially prejudiced by Mr. Campoli's failure to call Carter as a defense witness. We conclude that the defendant has not demonstrated the existence of either a genuine conflict of interest or material prejudice. Our reasoning differs somewhat from that of the Appeals Court although we reach the same result, and accordingly we affirm the denial of the motion for new trial.[2]

---

[1] In his motion for a new trial, Walter claimed a violation of art. 12 of the Massachusetts Declaration of Rights and of the Sixth and Fourteenth Amendments to the United States Constitution. On appeal, Walter explictly alleges violation of art. 12 but it is unclear whether his claim of deprivation of his "constitutional right to an attorney" refers to the Massachusetts Constitution or the United States Constitution. In view of our conclusion that neither a genuine conflict of interest nor material prejudice was demonstrated, we need not focus on this distinction. See *Commonwealth* v. *Hurley,* 391 Mass. 76, 86 (1984). See also *Commonwealth* v. *Soffen,* 377 Mass. 433, 437 (1979).

[2] At his motion for a new trial, Walter argued two additional issues not raised during trial or at his appeal from his conviction: (1) the judge's failure to hold a voir dire on voluntariness of an admission by him to the police and his failure to submit the issue to the jury; and (2) the judge's use of modified "*Madeiros*-type" language in his jury instruction on reasonable doubt. Even if these issues are properly before us, the action of the judge was proper for the reasons stated in the opinion of the Appeals Court. See *Commonwealth* v. *Walter,* 19 Mass. App. Ct. 82, 92 (1984).

The relevant facts are as follows. A little before 1 A.M., on June 8, 1981, the victim, George Johnson, arrived at a bar in Pittsfield known as The Market. Walter, Carlos Swanson, and Duane Carter were also present in the bar. Johnson knew Walter because during the past year he had been a frequent and regular customer of the small variety store Johnson owned. Johnson left the bar at about 1:50 A.M. After he had walked several blocks towards his nearby home, he was attacked and robbed. Johnson testified that, although he could not see his assailant, he knew the voice was Walter's.

Swanson and Carter had spent the day together on January 7, 1981, walking about Pittsfield. They spent the evening at a bar from about 8 P.M. until 11:30 P.M. At about 1 A.M. on January 8, 1981, they were interrupted by a Pittsfield police officer while Swanson was inside an automobile attempting to "pop" the ignition and Carter was standing alongside the automobile. They were not then taken into custody, however, and Swanson and Carter proceeded to The Market, which was nearby. This was the same morning Johnson was robbed.

Swanson testified that while he and Carter were at The Market on the morning of January 8, Walter told him that Johnson had some money with him and that he was going to "take him off and otherwise rob him." Swanson further testified that he saw Walter talk with Johnson. Johnson left the bar at about 1:40 A.M., Walter left five minutes later, and Swanson saw Walter following Johnson down the street with a club. After he was arrested on January 10 for the attempted automobile theft, Swanson gave the police a written statement concerning the Johnson incident in which he said that Carter was with him when he left The Market and saw Walter following Johnson.

On February 5, 1981, Mr. Campoli of the Massachusetts Defenders Committee was appointed to represent the defendant on several charges, including the January 8 unarmed robbery of Johnson. On the same day, he was also appointed to represent Carter on several unrelated charges, including the January 8 attempted automobile theft.

The following week the Commonwealth gave Mr. Campoli copies of Swanson's January 10 statement and his grand jury testimony as part of pretrial discovery in Walter's robbery case. Mr. Campoli was also provided with the Pittsfield police department's report and summary regarding the Johnson robbery which included a statement attributed to Swanson that he told police that he was with Carter and that they saw Walter follow Johnson. Before Walter's trial, Mr. Campoli also received a transcript of Swanson's testimony at Walter's District Court probable cause hearing. Carter's name did not appear on the Commonwealth's list of potential witnesses. No statement by Carter was included in those documents the Commonwealth provided Mr. Campoli. Discovery from the Commonwealth on the charges pending against Carter included the police report concerning Carter and Swanson's attempted car theft on January 8.

At the commencement of Walter's trial for the Johnson robbery, Mr. Campoli placed Carter's name on a list of potential defense witnesses to be read to the venire. On the first day of trial, Johnson took the stand and the testimony already discussed was elicited from him. Swanson then testified as stated earlier, that Carter was with him at The Market but that he was alone when he left the bar and witnessed Walter with a club in his hand. On cross-examination, Mr. Campoli probed the automobile theft incident more thoroughly and Carter's presence during the attempt was established.[3] Mr. Campoli led Swanson through a detailed account of Swanson's and Carter's activities during the day of January 7 and their arrival at The Market on the morning of January 8. He also explored the amount of alcoholic beverages the two consumed. The first day of trial ended in the midst of Mr. Campoli's cross-examination of Swanson.

The next morning the judge suspended the trial for a day to allow the Commonwealth to comply with Mr. Campoli's request that he be provided with a copy of the police report

---

[3] Mr. Campoli asked Swanson, "And you were with Duane Carter when it [the attempted automobile theft] happened?" to which Swanson answered, "Yes."

concerning the Swanson-Carter attempted automobile theft. The assistant district attorney objected that Mr. Campoli already had the document in his possession by virtue of his representation of Carter, but Mr. Campoli protested that, "I can't be held to discovery in other cases." In response to the prosecutor's remark that Mr. Campoli was going to call Carter as a witness, Mr. Campoli had replied, "I don't know that I am."

On the second day of testimony, Mr. Campoli moved to withdraw as Carter's counsel, noting that Carter's name was "mentioned throughout the police report." He stated that it "may develop that Mr. Duane Carter could be called as a witness in [Walter's] case. It would be an absolutely untenable position for me to attempt to represent Mr. Walter[ ] on the one hand and Mr. Carter on the other." No colloquy with Walter was conducted before the judge, but Mr. Campoli represented that he had explained the situation to Walter and Carter and that each understood what had happened.[4] The motion to withdraw was allowed and new counsel was appointed for Carter.

Mr. Campoli then resumed his cross-examination of Swanson which was both lengthy and thorough. As the Appeals Court stated, the examination was vigorous "and seriously impeached his credibility by eliciting numerous contradictions in his testimony." *Commonwealth* v. *Walter,* 19 Mass. App. Ct. 82, 85 (1984). Carter was never called as a witness.

In denying Walter's motion for a new trial, the judge ruled that there was no genuine conflict of interest.[5] While we will

---

[4] Mr. Campoli stated that he "would like Mr. Duane Carter personally to express his feelings he understands what has happened, so there can be no later misunderstanding." The judge then asked Carter if he understood why Mr. Campoli was withdrawing. Carter replied, "Yes, I understand."

[5] The judge found (1) that there was nothing to indicate that Carter would be a material witness, (2) that Walter suffered no prejudice by Mr. Campoli's initial representation of both Carter and Walter or by Mr. Campoli's decision not to call Carter as a defense witness, and (3) that at the time Mr. Campoli withdrew as Carter's attorney, there was nothing to indicate that his loyalties were diluted, that any real attorney-client relationship existed between Carter and Mr. Campoli, or that Mr. Campoli had been given confidential information by Carter which restricted Mr. Campoli.

not disturb a judge's subsidiary findings which are warranted by the evidence, "ultimate findings and conclusions of law, particularly those of constitutional dimensions, are open for our independent review." *Commonwealth* v. *Mahnke,* 368 Mass. 662, 667 (1975), cert. denied, 425 U.S. 959 (1976). *Commonwealth* v. *Jackson,* 377 Mass. 319, 325 (1979).

We reiterate the cardinal principle that "[a] defendant is entitled to the untrammeled and unimpaired assistance of counsel free of any conflict of interest and unrestrained by commitments to others." *Commonwealth* v. *Hodge,* 386 Mass. 165, 167 (1982), quoting *Commonwealth* v. *Michel,* 381 Mass. 447, 453 (1980). Under art. 12 of the Massachusetts Declaration of Rights, once a genuine conflict is shown, there is no additional requirement that prejudice be proved. *Commonwealth* v. *Hodge, supra* at 168, and cases cited. It is, however, equally well-settled that a genuine conflict will not be automatically inferred from dual representation.[6] The "defendant's conviction will be reversed on this basis only when the alleged conflict is supported by adequate evidence of its existence. . . . [T]he defendant, on appeal, is obliged to show demonstrative proof detailing the precise character of the alleged conflict" (citations omitted). *Commonwealth* v. *Davis,* 376 Mass. 777, 781 (1978). The burden lies with the defendant to prove, without relying on mere conjecture or speculation, that a genuine conflict existed. See *id.; Commonwealth* v. *Bolduc,* 375 Mass. 530, 541 (1978). The defendant has not met this burden.

This case differs from those situations in which courts have most typically found that a conflict existed, e.g., where an attorney represents codefendants with inconsistent or contradictory lines of defense; where an attorney or an associate main-

---

[6] A conflict of interest will not be inferred simply from the existence of joint representation, *Commonwealth* v. *Davis,* 376 Mass. 777, 781 (1978), and cases cited; *Commonwealth* v. *Pires,* 389 Mass. 657, 661 (1983), a situation wherein "potential for conflict of interest [is considered] grave." A.B.A. Standards Relating to the Defense Function § 3.5 (b) (Approved Draft 1971), quoted in *Commonwealth* v. *Michel,* 381 Mass. 447, 456 n.13 (1980). Similarly, no inference of conflict may be drawn from the mere existence of dual representation of a defendant and a potential witness for the defense who is otherwise unrelated to the case.

tains an attorney-client or direct and close personal relationship with a material prosecution witness; or where an attorney has business reasons for preferring a verdict unfavorable to the defendant he or she represents. See *Commonwealth* v. *Leslie,* 376 Mass. 647, 653 & nn.11, 12, 13 (1978), cert. denied, 441 U.S. 910 (1979), and cases cited. See also *Commonwealth* v. *Hodge, supra.* We nevertheless agree that where an attorney simultaneously represents both a criminal defendant and a possible defense witness, the *potential* for a serious conflict does exist.

The Superior Court judge found that Mr. Campoli had knowledge of a potential conflict of interest at the second day of trial, but that his withdrawal from representing Carter and the judge's appointment of new counsel for Carter resolved the conflict. We conclude that the defendant has not demonstrated that the potential conflict ever ripened into a genuine conflict of interest and, therefore, do not reach Walter's contention that the actions of Mr. Campoli and the judge on the second day of trial constituted a cure that came too late.

The Appeals Court stated that a potential conflict developed into a genuine conflict at the point when "the attorney realized or should have realized that Carter had material, or nontrivial, testimony to offer as a defense witness for Walter." *Commonwealth* v. *Walter, supra* at 89. See *Commonwealth* v. *Hodge, supra* at 168; *Commonwealth* v. *Cobb,* 379 Mass. 456, 461-462, vacated in part sub nom. *Massachusetts* v. *Hurley,* 449 U.S. 809 (1980), appeal dismissed, 382 Mass. 690 (1981). Even if we assume this to be so, the matter is not resolved there because the defendant would also have to show that his attorney realized or should have realized that his other client also would ordinarily be expected to be a defense witness.

An examination of case law considering potential conflicts of interest involving the analogous situation of simultaneous representation of a defendant and a prosecution witness is instructive.[7] In those cases where a genuine conflict was found

---

[7] The instant case does not concern a question of defense counsel's simultaneous representation of a criminal defendant and a significant prosecution

to exist, the would-be witness did ultimately testify for the prosecution and gave evidence concerning a critical issue in the case against the defendant, and there was strong evidence that such testimony was reasonably foreseeable. See *Commonwealth* v. *Cobb, supra* at 461-462 (defense attorney knew client possessed potential testimony material to Commonwealth and was a likely witness, because the attorney himself induced the client to come to court voluntarily to testify for the prosecution and thereby avoid a summons); *Commonwealth* v. *Hodge, supra* at 168 (the attorney operated under genuine conflict from the time it became "clear" that client of the attorney's partner "*would* give nontrivial testimony for the Commonwealth" [emphasis added]); *Commonwealth* v. *Michel, supra* at 453 (a genuine conflict was "rather obvious" before trial since one of two codefendants jointly represented by members of the same firm had, in the presence of a firm member, given police a statement inculpating his codefendant, and counsel knew that he had felony indictments pending. In this situation it was reasonably foreseeable by counsel that this codefendant would testify against the other). It is significant, however, that in *Commonwealth* v. *Edgerly,* 390 Mass. 103, 107-108 (1983), we held that no conflict existed although the prosecutor had informed the judge during the trial that defense counsel represented on unrelated matters a person who might be called on behalf of the Commonwealth. Defense counsel told the judge that he would have a problem conducting cross-examination if the prosecution called the prospective witness. The defendant's testimony implicated this individual in the victim's death, and the prospective witness testified on voir dire that he was willing to give testimony for the prosecution. We nonetheless held that the case did not concern a "conflict of

witness. Carter was never called as a witness for the Commonwealth. We agree with the Appeals Court that although pretrial discovery provided to the defense in Walter's case could have suggested that Carter had testimony useful to the prosecution, the Commonwealth manifested no intent to utilize Carter as a witness. It was therefore reasonable for Mr. Campoli to assume that Carter would not be called to testify for the Commonwealth. See *Walter, supra* at 89-90.

interest inherent in defense counsel's simultaneous representation of a defendant and a significant witness for the prosecution. . . . [The would-be witness] *never testified"* (citations omitted, emphasis added). *Id.* at 108.

In the case before us there is even less evidence than in *Edgerly* that the prospective witness Carter had material testimony to offer.[8] No pretrial discovery received by Mr. Campoli in Walter's case could have reasonably led him to believe that Carter would be a valuable defense witness and that Mr. Campoli would have had to engage in pure speculation to imagine how Carter could be useful to impeach Swanson's credibility or to help the defense. *Commonwealth* v. *Davis,* 376 Mass. 777, 781 (1978). After the first day of trial, however, there was no more evidence that Carter would have valuable testimony to offer the defense than there was before trial. If anything, Swanson's testimony that Carter was not with him outside The Market when he saw Walter following Johnson was evidence which, coupled with his contrary pretrial statements, diminished whatever relevance Carter may have had to Walter's case and made it even less likely that Carter would have testimony helpful to his defense. We have already stated that there was nothing in the pretrial discovery which would have prompted Mr. Campoli to believe that Carter might serve as a significant witness. The testimony elicited from Swanson

---

[8] Unlike the situation of the prospective witness in *Edgerly,* there is no indication that Carter had any testimony to offer the defense whatsoever. Carter does not appear to have made any statements indicating that he might have had information which could have benefited Walter. The Appeals Court noted that there is no evidence that Carter was questioned before trial about the events at The Market during the morning in question. *Walter, supra* at 89 n.6.

The only indication of what Carter might have been able to contribute to Walter's case suggests that he had no material testimony to offer. The transcript of the May 19, 1981, hearing on Carter's guilty pleas to charges which included the January 8 attempted automobile theft specifically refers to the incident. Carter stated that he was "inebriated most of the time" throughout the middle of December to the middle of January and that "there were a lot of things I don't remember. That particular incident [the attempted automobile theft with Swanson], I can't remember the fellow's name." Carter was not available at the hearing on the motion for a new trial. Like the witness in *Edgerly,* Carter never testified at trial.

on cross-examination was largely duplicative of the information Mr. Campoli received before trial. Through discovery provided him in Carter's cases, Mr. Campoli was aware that both Swanson and Carter were codefendants, charged with having attempted to steal a car together on the same morning and in the same general area where Johnson was robbed. The fact that Mr. Campoli elicited the details of Carter's connection with the attempted car theft did not heighten the probability that Carter would be helpful to the defense. Mr. Campoli's detailed cross-examination of Swanson relative to his activities during the day before Johnson was robbed revealed that Swanson had been in Carter's company for much of that time. This also added little to the information Mr. Campoli already had and did not serve to suggest that Carter had potential testimony of greater significance to the defense than had been indicated by pretrial discovery.

Neither the fact that the judge granted Mr. Campoli's motion to withdraw as Carter's counsel on the second day of trial, nor the reasons Mr. Campoli gave for so moving demonstrated that Carter was a material defense witness at this point. The motion would have been a proper, thoughtful, and prudent action for Mr. Campoli to take if he believed he was faced with a *possible* conflict as opposed to a genuine conflict. See S.J.C. Rule 3:07, Canon 2, DR 2-110 (C) (2) and (6), as appearing in 382 Mass. 775-776 (1981); Canon 5, DR 5-105 (B), as appearing in 382 Mass. 781 (1981). See also Canon 1 and DR 1-102 (A) (5), as appearing in 382 Mass. 769-770 (1981). Although we do not read Mr. Campoli's pronouncements as an affirmation of the materiality of Carter's testimony, we observe that, even if it was so intended, counsel's characterization of his ethical position is not necessarily conclusive. See *United States* v. *Jeffers,* 520 F.2d 1256, 1261-1267 (7th Cir. 1975), cert. denied, 423 U.S. 1066 (1976). Moreover, it is not "obvious," as Walter alleges, that the judge's allowance of the motion to withdraw was an "appreciat[ion] of the materiality of Carter's testimony." The judge was within his discretion and authority so to rule even if he believed that there was only the possibility of a conflict. See *Commonwealth* v. *Connor,* 381 Mass. 500, 504 n.4 (1980) ("The proper administra-

tion of justice embraces such matters as protection of the witnesses and the *appearance of fairness"* [emphasis added]).

We agree with the reasoning of the Appeals Court that: (1) Mr. Campoli was not under a continuing duty to Carter which would have inhibited him from calling Carter as a witness; (2) the record reflects no indication that Carter had communicated confidential information to Mr. Campoli such that he was under a continuing duty to Carter after withdrawing as his counsel; and (3) Walter has not demonstrated that Mr. Campoli was restricted in his cross-examination of Swanson. *Walter, supra* at 90-91. We also hold that reversible error was not committed by the judge's failure to conduct a colloquy with Walter at the hearing on the motion to withdraw as Carter's counsel. See *Commonwealth* v. *Connor, supra* at 506; *Commonwealth* v. *Davis,* 376 Mass. 777, 784-785 (1978). Such an inquiry is required precedent to continued simultaneous representation in the face of a genuine conflict. As no such conflict existed, and as counsel did not in any event persist in simultaneous representation, a colloquy was not necessary.

Although we find no genuine conflict, a conviction may be overturned if the defendant demonstrates a potential conflict which materially prejudiced him. *Commonwealth* v. *Davis, supra* at 783. *Commonwealth* v. *Soffen,* 377 Mass. 433, 437 (1979). See *Commonwealth* v. *Edgerly,* 390 Mass. 103, 108 (1983). The record is bare of evidence that calling Carter to testify would have been a "viable tactic." See *Commonwealth* v. *Edgerly, supra,* citing *Commonwealth* v. *Cote,* 7 Mass. App. Ct. 150, 152 (1979). See discussion, *supra* at note 8. Walter has contended that the potential value of Carter's testimony was the possibility that he could impeach Swanson. The record reveals that Mr. Campoli's cross-examination effectively impeached Swanson's testimony. Nothing suggests that Carter's testimony could have added anything to improve the defendant's case.

> *Order denying motion for new*
> *trial affirmed.*