Cowin, J.
The defendant, Humberto Guzman, was indicted on March 13, 1991, for trafficking in cocaine and conspiracy to distribute cocaine. He was found guilty on all counts on January 29, 1992, after a jury trial. Guzman had fled in the middle of trial and was unable to be sentenced until June 11, 1992, at which time he received a sentence of 18 to 20 years (15-year minimum mandatory) to MCI Cedar Junction. A motion for a new trial was filed in March 1993 and an amended motion was filed August 6, 1993. Hearings on the motion were held in May and July 1994.[1] The primary claim set forth by defendant is that he was denied effective assistance of counsel at trial because of the conflict of interest of his trial counsel, Attorney Thomas Giblin. For the reasons set forth below, the Court concludes that such a conflict existed and allows the motion for a new trial.[2]
BACKGROUND
The following facts are drawn from the trial of the case, an affidavit filed by Attorney Giblin, a hearing held on the motion for new trial and from court records. Defendant’s arrest resulted from a Boston Police Department investigation into drug activity in the Jamaica Plain area and the execution of certain search warrants. In January 1990, Detective Kenneth Acerra received information from a confidential informant that a Hispanic male known both as “Humberto” and “Esteban” was involved in drug activity in his apartment #D at 216A South Street, Jamaica Plain. The warrant was executed and lactose (a cutting agent for cocaine) and personal papers were seized. Another search warrant was issued on February 10, 1990, for the first floor of 86 Pleasantview Street, Roslindale. In *640 a boiler in the basement at that address the police found 270 grams of cocaine and a handgun. In the apartment they seized a beeper and a set of keys to a safe deposit box. A Dominican betting slip with the name “Humberto” on it was found inside the paper bag in which the cocaine and gun were located. The apartment was allegedly a stash house of the defendant. A search warrant was then issued and executed for the safe deposit box in which over $42,000.00 in cash was found. A final search warrant was issued for a 1982 Chevrolet Citation, allegedly belonging to the defendant. In this automobile was found cocaine and a scale.
Detective Acerra’s investigation also led to the arrest of other individuals, notably Arthur Logue and James Spencer. These two men were arrested after they called the beeper the police had seized and asked for “Humberto” and a buy was arranged. The defendant in the instant case, Humberto Guzman, was allegedly their supplier. Guzman was not in the United States, however, at the time of the arrests of Logue and Spencer and was not arrested until substantially later. Attorney Thomas Giblin represented Guzman at trial.
James Spencer was indicted on April 13, 1990, for trafficking in cocaine and conspiracy. He was represented by Attorney Thomas Giblin also. Spencer pled guilty to a reduced charge and was sentenced to six years at MCI Concord on September 6, 1990. Spencer’s case was completed at the time of Guzman’s indictment in March 1991.
Arthur Logue, also charged with trafficking in cocaine, was represented by Attorney Lissa C. Pancare. Attorney Giblin had conversations with Ms. Pancare regarding the defense of the Logue and Spencer cases and caused his client, Spencer, to furnish an affidavit for Logue for a motion to suppress. Logue’s case was still pending at the time of Guzman’s trial.
During Attorney Giblin’s representation of Spencer, Guzman was referred to only by his first name. As a result, when Giblin began representing Guzman, Giblin was not aware of any potential conflict.
Prior to Guzman’s trial, Giblin filed a motion in limine seeking to preclude Logue from testifying for the Commonwealth. The motion was heard on January 21, 1993, and was allowed.
At trial, Guzman claimed that he had been mistaken for his cousin Esteban Maffeo; the prosecution sought to establish that Guzman and Esteban Maffeo were the same person. The prosecution’s theory rested in part on the facts that police claimed to have seen Logue purchase cocaine from Guzman, and that Logue purchased cocaine from a man who called himself “Humberto." However, at a photo array, Logue failed to identify Guzman as the man named “Humberto” from whom he regularly made purchases. In an affidavit, Giblin states that if called as witnesses, both Logue and Spencer would have testified that Guzman was not the man from whom they purchased cocaine. Giblin Affidavit, para. 11, at 3.
Guzman now contends that Logue’s testimony would have been favorable to him, and that Giblin’s motion to preclude Logue’s testimony was motivated only by Giblin’s desire to avoid the appearance of a conflict of interest, which prejudiced Guzman’s right to a fair trial.[3]
DISCUSSION
A defendant, as part of his fundamental right to counsel, has the right to the full and undivided loyalty of his counsel, free from any conflict of interest. Commonwealth v. Burbank, 27 Mass.App.Ct. 97, 103, rev. denied, 405 Mass. 1201 (1989), citing Commonwealth v. Davis, 376 Mass. 777, 780 (1978); Commonwealth v. Shraiar, 397 Mass. 16, 20 (1986). When a genuine conflict of interest exists, the defendant’s conviction must be reversed, regardless of whether the defendant’s case was actually prejudiced or adversely affected. Id., citing Commonwealth v. Soffen, 377 Mass. 433, 437 (1979); Commonwealth v. Hodge, 386 Mass. 165, 169-70 (1982); Commonwealth v. Shraiar, 397 Mass. at 20. Where only a potential conflict exists, the defendant has the burden of showing that his right to a fair trial was prejudiced. Commonwealth v. Cobb, 379 Mass. 456, 461-62, vacated in part sub nom Massachusetts v. Hurley, 449 U.S. 809 (1980), appeal dismissed, 382 Mass. 690 (1981); Commonwealth v. Hodge, 386 Mass. at 168 (1982); Commonwealth v. Michel, 381 Mass. 447, 453 (1980).
Giblin’s representation of Guzman, the defendant in the instant case, and Spencer, who was essentially a co-defendant of Logue and who was clearly a material witness in the case against Guzman, does not create a per se conflict. See Commonwealth v. Walter, 396 Mass. 549, 555 (1986); Commonwealth v. Filippidakis, 29 Mass.App.Ct. 679, 682-83, rev. denied, 409 Mass. 1102 (1991). However, in contrast to Walter, here Guzman has met his burden of proving that “trial counsel’s own interests, or those of another client, impair[ed] his independent professional judgment,” Commonwealth v. Burbank, supra, 37 Mass. App. Ct. at 103, citing S.J.C. Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981); Commonwealth v. Michel, 381 Mass. at 451 (1980); Commonwealth v. Shraiar, 397 Mass. at 20 (1986), and resulted in prejudice to Guzman’s right to a fair trial.
Giblin’s fear of the appearance of a conflict caused him to prevent Logue from testifying, even though it was clear that Logue’s testimony was of major importance to the central issue in Guzman’s defense, i.e., mistaken identity. Compare Fogarty v. Commonwealth, 406 Mass. 103, 109, n. 7 (1989) (no conflict exists where witness’s purpose is merely to testify as to chain of custody, an issue not critical in the case).
Not only did Giblin fail to call Logue as a witness, but he successfully moved to prevent the prosecution from so doing, on the sole basis that he wished to avoid *641 even the appearance of a conflict. It is clear that at the time Giblin argued his motion in limine to exclude Logue, he was already aware that Logue may have been a favorable witness. When Giblin’s motion was argued, the prosecution conceded that Logue had failed to identify Guzman: “He did not recognize anybody in that photo array. He just didn’t recognize him.” Transcript of Proceedings, January 21, 1993 (Tr.) at I-7.[4]
In contrast to the situation in Walter, Giblin would not have had to “engage in pure speculation to imagine how [Logue] could be useful to . . . help the defense,” Commonwealth v. Walter, 396 Mass. at 555, but “should have realized” that Logue was a crucial witness. Id. Rather than pursue his duty of “undivided loyalty” to his client, Giblin allowed his own contrary interests to control his trial strategy. Guzman’s right to a fair trial was prejudiced when Giblin successfully argued to exclude a witness who would have provided crucial testimony on his client’s behalf.[5]
ORDER
For the foregoing reasons, the defendant’s motion for a new trial is hereby ALLOWED.

 As to the scheduling problems that delayed the hearing, see Court’s Order of May 6, 1994.

 Given the resolution of this issue, it is not necessary to consider the other claims raised by defendant.

 Attorney Giblin’s position is not entirely comprehensible. The Court draws the inference from Giblin’s own testimony that he was concerned with the appearance of a conflict of interest. The essence is that he appears to have put his client Guzman at a disadvantage because of a potential conflict arising from his prior representation of Spencer.

 There was never any extensive analysis during argument on the motion in limine about the content of the potential testimony. The defense who, later events have established, might have benefited from the use of the testimony, sought to preclude Logue from testifying. The Court’s assumption was that if the testimony were useful to the defendant, defense counsel would desire its admission. All that was presented to the Court was defense counsel’s effort to exclude it. The Court, assuming therefore that the testimony would only benefit the Commonwealth, inquired of the Commonwealth and learned that Logue would be of little assistance to the Commonwealth. Thus, the logical response was to eliminate any potential conflict of interest claim by allowing the motion in limine and precluding Logue from testifying.

 Guzman also argues that Giblin should have called Spencer as a witness. For the reasons stated in the body of this opinion, Giblin’s failure to call Spencer also deprived Guzman of the effective assistance of counsel.